USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 2/3/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
:
JUAN CARLOS DERAS ARANA, :
:
                                  Petitioner, :     1:26-cv-240-GHW
:
           -v- : MEMORANDUM OPINION &
: ORDER
PAUL ARTETA, *Sheriff, Orange County, et al.*, :
:
                              Respondents. :
:
-------------------------------------------------------------- X

GREGORY H. WOODS, United States District Judge:

## I. INTRODUCTION

"This is another case in a recent line of cases concerning the scope of the government's authority to detain noncitizens during the pendency of removal proceedings under two provisions of the Immigration and Nationality Act ("INA")—8 U.S.C. § 1225 ("§ 1225"), under which a noncitizen's detention is generally mandatory, and 8 U.S.C. § 1226 ("§ 1226"), under which detention is generally discretionary." *Savane v. Francis*, 801 F. Supp. 3d 483, 484 (S.D.N.Y. 2025).

Petitioner Juan Carlos Deras Arana entered the United States without inspection sometime in 2002. Mr. Arana did not interact with the Government until April 2015, when he filed an application for an immigration benefit with the United States Citizenship and Immigration Services ("USCIS"). Following that application, USCIS initiated removal proceedings against Petitioner. In April 2023, the immigration judge assigned to Mr. Arana's case dismissed the removal proceedings without prejudice upon joint motion of the Department of Homeland Security ("DHS") and Mr. Arana. On December 26, 2025, Mr. Arana was encountered by the United States Immigration and Customs Enforcement ("ICE") for the first time since the dismissal of the prior removal proceedings against him. ICE arrested Mr. Arana and invoked § 1225(b)(2)(A) as the applicable detention provision.

As a result, on January 12, 2026, Mr. Arana filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, asserting that his continued detention violates the plain language of the INA, the INA's implementing regulations, and his Fifth Amendment rights, and seeking his immediate release. The principal question before the Court is whether Petitioner is detained under § 1225 or § 1226. The subsidiary question—depending upon which section authorizes Petitioner's detention—is, whether Petitioner's detention violated the INA and the Fifth Amendment's procedural and substantive due process requirements.

In *Savane*, this Court declined to resolve the threshold statutory interpretation question—whether under § 1225 a noncitizen's detention is mandatory irrespective of whether or how long a noncitizen has been physically present in the United States so long as the noncitizen has not yet obtained lawful status—that has divided courts both in this District and across the country. But the Court's decision in *Savane* was narrow. The Court's decision in *Savane* was explicitly cabined to the particular record and question presented in that case—whether parole, once granted pursuant to 8 U.S.C. § 1182, can be revoked without *any* notice or process given Respondents' admitted noncompliance with the INA's implementing regulations governing such parole. Accordingly, *Savane* does not control the outcome of Mr. Arana's case.

Therefore, the Court addresses that threshold statutory interpretation question now. In addressing the statutory interpretation question here, the Court is persuaded by, and joins those courts in this District, which have concluded that the plain text of § 1225(b) mandates detention for all "applicants for admission" pending resolution of removal proceedings, irrespective of whether a noncitizen is physically present, or has been residing in, the United States at the time Respondents' detention authority is invoked. Because, having now considered the statutory interpretation issue, the Court concludes that Petitioner is an "applicant for admission" within the plain meaning of the INA, Mr. Arana is lawfully detained pursuant to 1225(b). Accordingly, Mr. Arana's petition is

DENIED.

## II.  BACKGROUND[1]

Mr. Arana is a citizen of Guatemala.  Pet. ¶ 25.  He entered the United States without inspection sometime in October 2002 somewhere near the Arizona border.  *Id.*; Nevin Decl. ¶¶ 3, 6.  From the time of his initial entry into the country sometime in 2002 until 2015 Mr. Arana had no contact with the Government because of his immigration status.  In April 2015, Petitioner filed an application for an immigration benefit with USCIS.  Nevin Decl. ¶ 4.  In connection with that application, USCIS initiated removal proceedings against Mr. Arana in 2017.  Pet. ¶ 25; *see also* Nevin Decl. ¶ 4; Dkt. No. 10-1.  Respondents issued Mr. Arana a Notice to Appear ("NTA"), which identified that Mr. Arana is "an alien present in the United States who has not been admitted or paroled."  Dkt. No. 10-1.  Mr. Arana was charged with removability under 8 U.S.C. § 1182(a)(6)(A)(i), a charge applicable to individuals who are "present in the United States without admission or parole."  *Id.*; *see also* Nevin Decl. ¶ 4.  Mr. Arana's initial master calendar hearing was scheduled for December 6, 2017.  Nevin Decl. ¶ 6.

On December 6, 2017, Mr. Arana appeared through counsel before the immigration judge, during which he admitted the factual allegations stated in the NTA.  *Id.*  On April 11, 2023, upon DHS's and Mr. Arana's joint motion, the immigration judge dismissed the removal proceedings against Mr. Arana without prejudice "on grounds of prosecutorial discretion."  *Id.* ¶ 7; *see also* Pet. ¶ 25.  Mr. Arana was not detained during the pendency of those removal proceedings, nor was he paroled under 8 U.S.C. § 1182(d)(5)(A), nor released on his own recognizance under § 1226.  Pet. ¶ 25.

---

[1] The Court makes the following findings of fact, which are undisputed unless otherwise noted.  *See* 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of the matter as law and justice require."); *see also Mendez Ramirez v. Decker*, 612 F. Supp. 3d 200, 207 n.2 (S.D.N.Y. 2020).  Some of the facts are drawn from Mr. Arana's habeas corpus petition (the "Petition" or "Pet."), Dkt. No. 1, from the return, Dkt. No. 10, and from officer Timothy Nevin's declaration in support of Respondents' opposition, Dkt. No. 12 ("Nevin Decl.").

3

On December 26, 2025, ICE officers were conducting license plate checks on vehicles in White Plains, New York. Nevin Decl. ¶ 8; Dkt. No. 10-2. One such vehicle was registered to Mr. Arana, who, a DHS record check revealed, had a prior immigration history. Nevin Decl. ¶ 8; Dkt. No. 10-2. The ICE officers approached Mr. Arana, who matched the description of the car's registered owner, as he made his way to the vehicle. Nevin Decl. ¶ 8; Dkt. No. 10-2. ICE asked Mr. Arana for identification and Mr. Arana produced his Guatemalan identification card. Nevin Decl. ¶ 8; Dkt. No. 10-2. In response to ICE's questioning, Mr. Arana stated that he does not have any pending immigration petitions or applications. Nevin Decl. ¶ 8; Dkt. No. 10-2. ICE issued an I-200 Warrant of Arrest and arrested Mr. Arana. Nevin Decl. ¶ 8; Dkt. No. 10-3.

Following his arrest, Mr. Arana was transported to 26 Federal Plaza, where ICE served him a a second NTA. Dkt. No. 10-4; *see also* Pet. ¶ 26. The next day, Mr. Arana was transferred to the Orange County Jail in Goshen, New York. Nevin Decl. ¶ 11. On December 31, 2025, Mr. Arana appeared *pro se* before the immigration court in New York. *Id.* ¶ 12. The immigration judge adjourned Mr. Arana's hearing to January 7, 2026 to permit him to secure counsel. *Id.* ¶¶ 12, 13. On January 7, 2026, Mr. Arana, now represented by counsel, appeared before the immigration judge, during which, Petitioner again admitted to the factual allegations in the NTA and conceded his inadmissibility. *Id.* ¶ 13. And because Mr. Arana requested a review of his custody determination; a custody redetermination hearing was scheduled for January 14, 2026. *Id.* ¶ 14.

On January 12, 2026, Mr. Arana filed a petition for writ of habeas corpus. *See generally* Pet. Mr. Arana argues that his detention under § 1225(b)(2)(A) "violates the plain language" of the INA because § 1225(b)(2)(A) "does not apply to individuals like [him] who . . . resid[e] in the United States." *Id.* ¶ 11. Mr. Arana argues that his detention under § 1225(b)(2)(A) is "contrary to" DHS's own long-standing interpretation that individuals present in the United States without inspection are governed by § 1226(a). *Id.* ¶ 12. And Mr. Arana contends that his detention, without a bond

4

redetermination hearing to determine whether he is a flight risk or danger to the community, violates his due process rights under the Fifth Amendment. *Id.* ¶ 59.

Less than two hours after the filing of Mr. Arana's Petition, the Court held a teleconference to discuss Mr. Arana's petition. Dkt. No. 6. Following that teleconference, the Court issued an order scheduling a second teleconference for January 16, 2026, and directed that Petitioner not be moved outside the Southern or Eastern Districts of New York until after the completion of the January 16, 2026 conference "in order to facilitate petitioner's communications with counsel." Dkt. No. 7. Mr. Arana was then moved to Brooklyn Metropolitan Detention Center, where he remains detained. Nevin Decl. ¶¶ 14, 16.

Respondents filed their opposition on January 21, 2026, in which they argue that Petitioner is lawfully detained pursuant to § 1225(b)(2)(A), and that because his detention is therefore mandatory, he is not entitled to a bond hearing and the only due process required is that which Congress has authorized. Dkt. No. 11 ("Opp'n") at 1–2. Petitioner replied on January 26, 2026, arguing that this Court should join "the majority of judges [in] this District" and hold that "individuals such as [Petitioner] are subject to detention under to § 1226." Dkt. No. 17 ("Reply") at 2.

III. **LEGAL STANDARD**

Mr. Arana brings this petition for a writ of habeas corpus under 28 U.S.C. § 2241. Section 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, No. 18 CIV. 4189 (RWS), 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim*, 538 U.S. 510, 516–17 (2003)). "Jurisdiction over 28 U.S.C. § 2241 habeas petitions is

properly limited to purely legal statutory and constitutional claims and does not extend to review of discretionary determinations by immigration judges." *Id.* (quotation and brackets omitted). The Court must "summarily hear and determine the facts, and dispose of the matter as law and justice require." 28 U.S.C. § 2243.

## IV. DISCUSSION

### A. Petitioner is Lawfully Detained Pursuant to § 1225(b)(2)(A)

Having considered the statutory interpretation question at issue in Mr. Arana's Petition, the Court concludes that Mr. Arana is an "applicant for admission" within the plain meaning of the INA. 8 U.S.C. § 1225(a)(1). Because Mr. Arana is an "applicant for admission," he is lawfully detained pursuant to § 1225(b)(2)(A) at this time.

In concluding that "Section 1225(b)(2) clearly applies to Petitioner," the Court finds persuasive the cogent interpretation of the INA's grants of detention authority articulated by Judge Vyskocil in *Chen v. Almodovar*, No. 25-cv-8350, 2025 WL 3484855, at *4 (S.D.N.Y. Dec. 4, 2025). *See also Weng v. Genalo*, No. 25 Civ. 9595, 2026 WL 194248 (S.D.N.Y. Jan. 25, 2026); *Liang v. Almodovar*, No. 1:25-CV-09322, 2025 WL 3641512 (S.D.N.Y. Dec. 15, 2025). As Judge Vyskocil carefully explained, "[t]here is no support in statutory text, precedent, or legislative history for the conclusion that Section 1225(b)(2) does not apply to aliens who are 'already here' after having illegally entered the country." *Chen*, 2025 WL 3484855 at *5.

"The Court is aware that a number of judges in this District, and elsewhere, have ruled otherwise." *Id.* at *4 (collecting cases). The Court does not "depart cavalierly from its respected colleagues. But different jurists can be faced with a difficult legal question and come out differently." *Chen v. Almodovar*, No. 25 Civ. 9670, 2026 WL 100761, at *1 (S.D.N.Y. Jan. 14, 2026). The Court agrees with Judge Vyskocil that "[i]n so ruling, [those decisions] ignore the plain text of Section 1225(a), which unambiguously defines the term 'applicant for admission' used in Section

6

1225(b)(2) to include an 'alien *present in the United States* who has not been admitted.'" *Id.* (quoting 8 U.S.C. § 1225(a)) (emphasis in *Chen*); *see also Weng*, 2026 WL 194248 at *4 ("Some courts have ruled that an alien who is 'already in the country' is not an 'applicant for admission' subject to detention under Section 1225(b)(2). That reading of Section 1225 does not square with the INA's definitions of 'admitted' and 'admission,' which, . . . refer to 'lawful' entry, . . . —not to "whether 'an alien [was] already here.'" (internal citations omitted)).

Indeed, "[e]quat[ing] mere presence in the United States with 'lawful entry' . . . [i]gnor[es] the text and history of INA." *Chen*, 2025 WL 3484855 at *4 (quoting 8 U.S.C. § 1101(a)(13)(A)). "[W]hen a statute includes an explicit definition, [the Court] must follow that definition." *Weng*, 2026 WL 194248 at *5 (alterations in *Weng*) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018)). Accordingly, the Court adopts the reasoning, and holding, as to the appropriate interpretation of the INA's grant of detention authority under § 1225(b), as persuasively articulated by Judge Vyskocil in *Chen*. This Court joins those courts in this District which have concluded that the plain text of § 1225(b) mandates detention for all applicants for admission pending resolution of removal proceedings, irrespective of whether a noncitizen is physically present, or has been residing in, the United States at the time Respondents' detention authority is invoked. *Weng*, 2026 WL 194248; *Chen*, 2026 WL 100761; *Chen*, 2025 WL 3484855.

In addition to adopting Judge Vyskocil's sound reasoning in *Chen*, the Court pauses to note one additional flaw in the reasoning presented in support of Petitioner's proposed interpretation of § 1225 and § 1226. Petitioner relies on the introductory text to 62 Fed. Reg. 10312 to support his argument that § 1226, and not § 1225, is the detention provision applicable to him. *See* Pet. ¶ 35 (citing 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination.")). Specifically, Petitioner cites to 62 Fed. Reg. 10312 in support of his arguments

7

that (1) Respondents have long treated noncitizens who physically entered the United States as subject to § 1226, not § 1225; and (2) under 62 Fed. Reg. 10312, an "applicant for admission" who is otherwise subject to mandatory detention under § 1225 but who has physically entered the United States is nonetheless "eligible for bond and bond redetermination." Pet. ¶ 35 (citing 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997)). But the language Petitioner cites from the INA's implementing regulations does not support the conclusion he urges the Court to draw for at least two reasons.

First, Petitioner makes too much of mere background text. The language Petitioner cites to from 62 Fed. Reg. 10312 does not appear in the regulatory text itself, only in the introductory section that precedes the rules. Second, the applicable implementing regulations themselves say the exact opposite—the regulations promulgated pursuant to the INA expressly preclude bond for noncitizens subject to § 1225. 8 C.F.R. § 1003.19(h)(2)(i)(B) ("[A]n immigration judge may not redetermine conditions of custody . . . with respect to the following classes of aliens . . . ."); *Mendez Ramirez*, 612 F. Supp. 3d at 205 ("If an arriving alien is subject to mandatory detention under Section 1225(b), 'an immigration judge "may not" conduct a bond hearing to determine whether an arriving alien should be released into the United States during removal proceedings.'" (quoting *Lopez*, 2018 WL 2932726, at *4)). Rather, 8 U.S.C. § 1182(d)(5)(A) "is the sole statutory authority under which a noncitizen subject to § 1225(b)(2)(a) may be paroled." *Savane*, 801 F. Supp. 3d at 491 (citing *Biden v. Texas*, 597 U.S. 785, 814–15 (2022) (Kavanaugh, J., concurring)). There are no implementing regulations or statutory provisions that the Court could identify based on the language Petitioner references that permit noncitizens subject to § 1225 to be eligible for bond or bond redetermination upon detention.

To the extent that the cited language is evidence of the fact that DHS previously applied § 1226 in granting bond to noncitizens properly subject to detention under § 1225, the Government's prior practice is well established. But the Court does not interpret the meaning of a

statute's text to conform with an agency's prior actions. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024) ("[C]ourts decide legal questions by applying their own judgment . . . and set aside any such [agency] action inconsistent with the law as they interpret it."). "[I]t 'remains the responsibility of the court to decide whether the law means what the agency says.'" *Id.* (quoting *Perez v. Mortgage Bankers Assn.*, 575 U.S. 92, 109 (2015) (Scalia, J., concurring in judgment)). The indisputable fact that DHS was, as a matter of practice, choosing not to apply § 1225 in a manner consistent with its text does not lend support to Petitioner's interpretation of the INA's grants of detention authority.[2]

In sum, the Court adopts Judge Vyskocil's analysis of the INA as articulated in *Chen*. Accordingly, for the same reasons articulated in *Chen*, the Court concludes that because Petitioner is, and remains, an "applicant for admission" within the meaning of the INA, Petitioner is subject to mandatory detention pursuant to § 1225.

### B. Petitioner's Detention Comports with Due Process

"Aliens, of course, are entitled to due process." *Zheng v. Mukasey*, 552 F.3d 277, 286 (2d Cir. 2009) (quoting *Burger v. Gonzales*, 498 F.3d 131, 134 (2d Cir. 2007)). "[T]he Fifth Amendment entitles noncitizens to due process of law," "whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993); then citing *Demore*, 538 U.S. at 523; then quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)). The Supreme Court has "repeatedly—and recently—reiterated this principle." *Munoz Materano v. Arteta*, No. 25 Civ. 6137, 2025 WL 2630826, at *12 (S.D.N.Y. Sep. 12, 2025) (citing *Trump v. J.G.G.*, 604 U.S. 670, 673 (2025)).

But, applicants for admission, "stand[] on a different footing." *Shaughnessy v. United States ex*

---

[2] *See Biden*, 597 U.S. 785 (No. 21-954), Tr. of Oral Argument 11:8–15 (Chief Justice Roberts: "If [DHS] ha[s] a situation where you're stuck because there's no way you can comply with the law and deal with the problem there, . . . I'm just wondering what's our problem? Our problem is to say what the law is.").

*rel. Mezei*, 345 U.S. 206, 212 (1953). Applicants for admission, including those noncitizens who are paroled into the United States for a limited purpose, are "treated, for constitutional purposes, as if stopped at the border." *Zadvydas*, 533 U.S. at 693; *see United States ex rel. Kordic v. Esperdy*, 386 F.2d 232, 235 (2d Cir. 1967) ("A 'parolee,' even though physically in the country, is not regarded as having 'entered' and thus has not acquired the full protection of the Constitution."). Accordingly, for an applicant for admission like Mr. Arana, "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Zadvydas*, 533 U.S. at 693; *see also Augustin v. Sava*, 735 F.2d 32, 36 (2d. Cir. 1984) ("Although aliens who petition for admission have no constitutional rights regarding their applications, they do have such statutory rights as Congress grants."); *Velasco Lopez*, 978 F.3d at 848 ("Detention during removal proceedings is a constitutionally valid aspect of the deportation process.").

And, as relevant here, for those noncitizens "subject to mandatory detention under Section 1225(b), 'an immigration judge "may not" conduct a bond hearing to determine whether an arriving alien should be released into the United States during removal proceedings.'" *Mendez Ramirez*, 612 F. Supp. 3d at 205 (quoting *Lopez*, 2018 WL 2932726, at *4); 8 C.F.R. § 1003.19(h)(2)(i)(B). Indeed, "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings." *Jennings*, 583 U.S. at 297.

Mr. Arana asserts that his ongoing detention "without a bond redetermination hearing to determine whether he is a flight risk or danger to others violates [his] right to due process." Pet. ¶ 59. But "the statutory language makes clear that aliens detained pursuant to Section 1225(b)(2)(A) have no statutory entitlement to bond hearings, and because *Mezei* instructs that, for aliens on the threshold of initial entry, the Constitution extends no farther than the statutory language itself, *Mezei* compels the conclusion that Petitioner's due process rights have not been infringed." *Mendez Ramirez*, 612 F. Supp. 3d at 221 (quoting *Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 650 (S.D.N.Y.

2018)); *see also Chen*, 2026 WL 100761 at *13 ("So he 'shall be detained' pending a full removal proceeding pursuant to Section 1225(b)(2)(A), which does not provide for a bond hearing."). "[B]ecause Petitioner cannot establish a statutory right to a bond hearing, the failure to provide a bond hearing does not constitute a violation of due process." *Weng*, 2026 WL 194248 at *8 (internal quotation omitted) (citing *Ramos v. Lyons*, No. 25 Civ. 09785, 2025 WL 3199872, at *8 (C.D. Cal. Nov. 12, 2025)).

The Court's decision in *Savane* does not alter the due process analysis with respect to Mr. Arana's petition here because *Savane* is distinguishable and cabined to the particular record in that case.[3] *Savane*, 801 F. Supp. 3d at 493 ("Respondents could not confirm whether there was any explanation for revoking Petitioner's parole and were unable to even identify the statutory basis for that revocation."). To state it plainly, *Savane* does not stand for the proposition that DHS must afford any more process beyond that which is afforded by the INA itself when DHS invokes its detention authority pursuant to § 1225. Rather, *Savane* stands for the narrow proposition that parole, once granted, cannot be revoked without any process. *Id.* at 491, 494–95 (holding that "Respondents' revocation of that parole under § 1182(d)(5)(A) without any process" including "the basic written notice requirement already required by regulation"[4] does not comport with due process in part because Respondents are required to follow their own regulations); *see also Morrissey v. Brewer*, 408 U.S. 471 (1972).

---

[3] Specifically, Respondents in *Savane* conceded that the alleged unsigned administrative warrant was not "part of the record" because Respondents did "not have access" to that warrant and declined to make any statements "about what it says or doesn't say." *Id.* at 486 (quoting Tr. at 8:21–8:25, 35:2–3, 36:2–8). And there was no indication in the record "that Mr. Savane was given any prior notice—much less written notice—" that Respondents were revoking his assumed parole. Indeed, "[a]t oral argument, Respondents were not even aware that 8 C.F.R. 212.5(e)(2)(i) imposed regulatory constraints on the decision to revoke parole." *Id.* at 492 ("Respondents could not confirm whether they had complied with 8 C.F.R. 212.5 and could not even identify what that regulation 'says or doesn't say.'" (quoting Tr. at 9:22–11:16)). "Nor did Respondents [in *Savane*] provide any explanation or reasoning for why or how they revoked Petitioner's parole." *Id.* at 492–93 (citing *Mata Velasquez v. Kurzdorfer*, 794 F. Supp. 3d 128 (W.D.N.Y. 2025)).
[4] 8 U.S.C. § 1103(a)(3), provides that the Secretary of DHS "shall establish such regulations; prescribe such forms of bond reports, entries, and other papers; issue such instructions . . . ." And 8 U.S.C. § 1103(g)(2) provides that the "Attorney General shall establish such regulations, prescribe such forms of bond reports, entries, and other papers, issue such instructions . . . ."

11

In *Savane*, the Court "assume[d], without holding, that Petitioner [remains] an 'applicant for admission,' who is 'seeking admission,' and that § 1225's mandatory detention provision is (and was) applicable to him, as Respondents argue[d]." *Id.* at 490–91. Because the Court assumed, without holding, that the petitioner in *Savane* was an "applicant for admission" and that § 1225 applied to him, and because Respondents did not dispute that Mr. Savane was "as a factual matter" previously released from DHS custody, it followed that his "initial release into the United States was only legally authorized under [8 U.S.C.] § 1182(d)(5)(A)."[5] *Id.* at 491. Accordingly, the Court held that, based on the record before it and the particular facts of Mr. Savane's case, Petitioner's due process rights were violated because Respondents did not afford Petitioner "any process at all before [revoking his assumed parole under 8 U.S.C. § 1182(d)(5)(A) and] detaining him,"—including the process required under 8 U.S.C. § 1182(d)(5)(A)'s implementing regulations which require, at minimum, "written notice to the alien" prior to parole revocation. *Id.* at 492 (quoting 8 C.F.R. 212.5(e)(2)(i)); *see also id.* at 494–95 ("The Court need does not need to determine exactly what 'additional or substitute' process Mr. Savane is entitled to prior to the revocation of his parole in this case because Petitioner here was not afforded any process[] . . . [a]nd no process at all is plainly inadequate.").

But Mr. Arana's case is not like Mr. Savane's because here the parties agree that Mr. Arana was never paroled at all—that he was only first detained by ICE immediately preceding the filing of his petition.[6] Because Mr. Arana was never paroled nor otherwise released from DHS custody, the

---

[5] As explained both here, and in *Savane*, 8 U.S.C. § 1182(d)(5)(A) "is the sole statutory authority under which a noncitizen subject to § 1225(b)(2)(a) may be paroled, as Respondents concede[d]" in *Savane*. 801 F. Supp. 3d at 491 (citing *Biden v. Texas*, 597 U.S. 785, 814–15 (2022) (Kavanaugh, J., concurring)).

[6] In *Savane*, "following his entrance into the United States, Mr. Savane was detained by ICE in Tecate, California . . . when, invoking § 1226 as the applicable statutory authority, Respondents released him on his own recognizance." 801 F. Supp. 3d at 486. And during oral argument, Respondents argue[d] that because Petitioner is properly deemed an 'applicant for admission,' it was a 'mistake that he was initially released under 1226 and he should have been released under a different provision'—namely 8 U.S.C. § 1182(d)(5)(A)." *Id.* at 488 (quoting Tr. at 7:24–8:2). This fact was central to the Court's decision in *Savane* because, as the Court explained, Respondents' invocation of § 1226 to justify [Mr. Savane']s initial release may have been, as Respondents argue[d], a 'mistake,' but Petitioner was

12

Court need not determine whether Mr. Arana's parole was lawfully revoked and the only process he is entitled to prior to Respondents' invocation of their § 1225 detention authority is what is provided by the INA's language itself.  Accordingly, the Court concludes that because Mr. Arana is an "applicant for admission" who "is [lawfully] detained under Section 1225(b)(2)(A), he is not entitled to a bond hearing.  Nor does his detention without bond violate due process." *Chen*, 2026 WL 100761 at *7; *Chen*, 2025 WL 3484855 at *8 ("[H]aving concluded that Section 1225 governs this case, the Court concludes that Petitioner is not entitled to be released, nor is he entitled to a bond hearing.").

## V.    CONCLUSION

For the foregoing reasons, Mr. Arana's petition for habeas corpus is DENIED.  The Clerk of Court is directed to enter judgment for Respondents, to terminate the motion pending at Dkt. No. 3, and to close this case.

SO ORDERED.

Dated:  February 3, 2026
New York, New York

_____
GREGORY H. WOODS
United States District Judge

---

still, as a factual matter, released from custody." *Id.* at 491.  Because Mr. Savane was, in fact, released from custody, the Court "treat[ed] [his] initial release as parole under § 1182(d)(5)(A)." *Id.* (internal citation omitted).